**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| RICKY LOTT, individually and on behalf of all others similarly situated, | Case No.: 1:26-cv-21639-KMM |
| Plaintiff, | |
| v. | |
| HEALTH GORILLA, INC., | |
| Defendant. | |

| | |
|---|---|
| HOLLY HUGHES, individually and on behalf of all others similarly situated, | Case No.: 1:26-cv-21952-KMW |
| Plaintiff, | |
| v. | |
| HEALTH GORILLA, INC., | |
| Defendant. | |

**PLAINTIFFS' JOINT MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CLASS COUNSEL FOR FILING OF CONSOLIDATED COMPLAINT**

Plaintiffs Ricky Lott and Holly Hughes (collectively "Plaintiffs") move jointly for the following relief: (1) pursuant to Fed. R. Civ. P. 42(a), consolidation of the above-captioned cases, as well as any other future actions filed or transferred related actions against Health Gorilla, Inc. ("Defendant") into the first-filed *Lott* action; (2) pursuant to Fed. R. Civ. P. 23(g)(3), appointment Mariya Weekes of Milberg, PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Tom Zimmerman of Zimmerman Law Offices, P.C. as Interim Class Counsel (collectively, "Proposed Interim Class Counsel"); and (3) requiring the filing of a consolidated complaint within thirty (30) days of entry of an order consolidating the cases and appointing interim class counsel.

**I.     INTRODUCTION**

Plaintiffs seek to hold Defendant liable for its unlawful disclosure of the highly sensitive

personally identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") that was subject to unauthorized access (the "Incident"). As a result of Defendant's failure to keep Plaintiffs' and the putative class members' Private Information secure and confidential, two class action lawsuits were filed in the United States District Court for the Southern District of Florida: *Ricky Lott v. Health Gorilla, Inc.*, Case No. 1:26-cv-21639-KMM, and *Holly Hughes v. Health Gorilla, Inc.*, Case No. 1:26-cv-21952-KMW (collectively, "Related Actions"). The Related Actions allege common issues of law and fact and seek relief on behalf of overlapping classes. Accordingly, to preserve party and judicial resources and prevent duplication of effort and the risk of inconsistent rulings, these actions are appropriate for consolidation.

In addition, as set forth below, Proposed Interim Class Counsel meet the requirements of Fed. R. Civ. P. 23(g)(3), are highly qualified to lead the consolidated action, and will efficiently and effectively lead this action for the benefit of all putative class members.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant does business as an "Implementer," in the Carequality framework, and a Qualified Health Information Network ("QHIN") in the Trusted Exchange Framework and Common Agreement ("TEFCA"). The Carequality framework and TEFCA are two national frameworks responsible for more than a billion patient-record exchanges between healthcare industry participants every month. TEFCA is a federally sponsored interoperability framework for healthcare providers to exchange patient records to facilitate coordination and continuity of care for patients nationwide, and the Carequality framework is a similar private network. Both the TEFCA and Carequality framework are administered and maintained by the non-profit organization The Sequia Project.

Certain of Defendant's customers abused these networks for illicit commercial gain on Defendant's watch. Through thinly veiled disguises, they pose as healthcare providers and falsely certify that they are accessing electronic patient records over these networks for treatment purposes.

Once they retrieve the records through the network, they use or sell the records for profits and commercial exploitation.

As an Implementer/QHIN providing access to these bad actors, Defendant was contractually, ethically, and legally responsible for vetting their qualifications to access the system prior to granting them access, including conducting adequate and robust due diligence prior to approving their applications, and monitoring and verifying that their activity over the network was consistent with legitimate uses. Defendant failed on all counts, resulting in unauthorized access to Plaintiffs' and Class members' patient records.

Following the Incident, two Related Actions have thus far been filed in the United States District Court for the Southern District of Florida against Defendant, each seeking to redress the harm caused by the Incident. The Related Actions all focus on the same factual predicate—the Incident—and contain nearly identical allegations and claims for relief.

## III.    THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT

Due to the similarity of the Related Actions, consolidation is appropriate. Each lawsuit arises from the same common set of operative facts—the Incident. Due to each Plaintiffs' reliance on the same set of operative facts, Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding.

### A.    Legal Standard

Federal Rule of Civil Procedure 42(a) reads:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

*Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). "The district court's decision under Rule 42(a) is purely discretionary." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492,

1495 (11th Cir. 1985); *see also In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, No. 20-22207-CIV-SINGHAL, 2020 WL 9071422, at *1 (S.D. Fla. Aug. 5, 2020) (quoting *Eghnayem*, 873 F.3d at 1313–14). The purpose of the rule is to "give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *See Fed. Election Comm'n. v. Fla. for Kennedy Comm.*, 492 F. Supp. 587, 597 (S.D. Fla. 1980) (quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2383 at 253 (1971)). However, before making a decision, the district court "must take into account the following factors: (1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.*; *see also Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2018 WL 809439, at *2 (S.D. Fla. Feb. 9, 2018) (citing *Hendrix*, 776 F.2d at 1495).

In light of this aim for organizational efficiency, "[c]ourts normally take a deferential approach in reviewing the lead plaintiff's selection of class counsel." *Arrington v. Burger King Worldwide, Inc.*, No. 18-24128-CIV-MARTINEZ/AOR, 2019 WL 13063501, at *1 (S.D. Fla. Mar. 21, 2019) (citing *Cooper v. DJSP Enters., Inc.*, No. 10-61261-CIV-ZLOCH/ROSENBAUM, 2010 WL 11552871, at *4 (S.D. Fla. Nov. 24, 2010)).

### B.   Argument and Authorities

#### 1.   *Common Questions of Law and Fact Predominate*

Even from a cursory review of the complaints filed in each Related Action, it is clear that common questions of law and fact permeate these cases. All focus on one factual event—Defendant's Incident—which was a result of Defendant's failure to protect Plaintiffs and Class members' Private

Information. Each action alleges the same factual contentions, *i.e.*, (i) Defendant knowingly violated its obligations to abide by best practices and industry standards in protecting patients' Private Information; (ii) these failures enabled an unauthorized third party access to the Private Information, putting Class members' Private Information at a serious and ongoing risk; and (iii) Defendant failed to disclose the full extent of the Incident and notify the affected and impacted individuals in a timely manner. These factual allegations are the gravamen of each of the Related Actions; thus, numerous common questions of fact exist.

Additionally, the legal claims asserted by each Plaintiff are identical. These claims are asserted on a classwide basis, on behalf of similarly defined classes, against the same Defendant. Plaintiffs' claims will rise or fall together. As such, common questions of law pervade these cases. *See, e.g.*, *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) (court consolidated data breach cases where: (i) "common questions of law and fact permeate[d] the[] cases"; (ii) all of the cases arose from the same alleged incident; (iii) all of the cases were class actions with class allegations; (iv) all of the cases shared at least one similar substantive claim – negligence; and (v) the cases were filed against a common defendant.); *Crowe v. Managed Care of N. Am., Inc. d/b/a MCNA Dental*, No. 23-61065-CIV-SINGHAL, D.E. 5, Order Granting Plaintiff's Unopposed Motion to Consolidate Cases (S.D. Fla. July 14, 2023) (same); *see also Doe v. School Board of Miami-Dade Cnty.*, No. 18-25430-CIV-O'SULLIVAN, 2020 WL 1465739, at *2 (S.D. Fla. Mar. 25 2020) (finding the factors and legal similarities of the claims "weigh in favor of consolidation" even where the "damages of each plaintiff are distinct and necessarily require separate evidence"); *Gainor v. Bryan Holdings, LLC*, No. 08-21680-CIV-MARTINEZ-BROWN, 2009 WL 10668297, at *2 (S.D. Fla. Sept. 2, 2009) ("[C]onsolidating the two cases promotes judicial efficiency because the same witnesses would likely be used in both trials and the Court would not be faced with redundant proceedings."); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D.

499, 502 (S.D. Fla. 2002) (consolidation of class actions was appropriate where the complaints presented virtually identical claims for relief based upon a single course of conduct).

### 2.      *The Hendrix Factors Support Consolidation*

Applying the relevant factors from *Hendrix* further supports consolidation.

#### a.      *Factor 1: The Cases Face the Risk of Inconsistent Adjudications*

"[T]here is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately." *Kaplan*, 2016 WL 9383330, at *2. The Related Actions are pleaded as class actions, and all allege claims for negligence, invasion of privacy, and unjust enrichment. Additionally, each Related Action seeks certification of similar classes. Absent consolidation, it is possible multiple overlapping classes could be certified which may lead to Defendant being responsible for more than one judgment for the same class. The potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications.

Moreover, all cases before this Court have the same procedural posture and are on similar courses of development. "Thus, this is not a case where consolidation will result in the delay of an otherwise trial-ready action." *McDonald*, 2021 WL 931599, at *4. Plaintiffs and Defendant will experience very little prejudice, if any, by consolidating the Related Actions.

Therefore, this factor militates in favor of consolidation. *See id.* at *3 (consolidation appropriate where the plaintiffs sought to represent an overlapping class consisting of persons impacted by the data breach; thus, if not consolidated, each of the cases would likely present largely duplicative requests for class certification raising common legal issues on whether certification is appropriate and the proper definition of any such class); *Newman*, 209 F.R.D. at 502 (consolidation found appropriate where it would promote judicial economy by streamlining and simplifying pre-trial, discovery and class certification issues, and by reducing waste, confusion, and delay that would result from multiple trials).

b.      *Factor 2: The Burden Posed by Multiple Lawsuits is Substantial*

Next, the burden on the parties, the witnesses, and judicial resources will be substantially lessened by consolidation. Here, Defendant will likely be subject to duplicative discovery requests, depositions, drafting, trial preparation, and hearings if the cases are not consolidated. By consolidating the cases, the Defendant will be able to conserve time and resources.

All Plaintiffs support consolidation, which augurs in favor of consolidation. *See Kavra*, 2017 WL 10295953, at *1 ("Here the absence of any objection to motion to consolidate augurs in favor of consolidation"); *Bedont*, 2022 WL 3702117, at *2. Consolidation will allow Plaintiffs to jointly prosecute the case, share discovery documents, and avoid the possibility of the Court certifying overlapping classes. The burden of maintaining all actions separately will be lessened by consolidation.

Lastly, judicial resources will be conserved by presiding over one consolidated case rather than multiple separate cases. This will reduce the number of motions, briefings, hearings, and trials before the Court.

Accordingly, the second *Hendrix* factor also weighs in favor of consolidation. *See Kaplan*, 2016 WL 9383330, at *2; *see also Fifth Third Bank v. MHA 8680 LLC*, No. 14-cv-139, 2014 WL 12697205, at *1 (M.D. Fla. July 28, 2014) (pre-trial consolidation ordered where discovery in the cases would overlap and it would conserve resources); *Gabbard v. Elec. Ins. Co.*, No. 22-cv-384, 2022 WL 2111503, at *1 (M.D. Fla. May 4, 2022) ("It would appear to be an exceedingly inefficient use of judicial and party resources to allow essentially the same dispute to be litigated concurrently in three separate lawsuits in the same Court before the same judge."); *Burrow*, 2018 WL 809439, at *7 ("Consolidation allows the parties to coordinate depositions, share documents, and determine the character of any proposed class that plaintiffs seek to certify.").

> c. *Factor 3: Litigating Separate Actions Would Require More Time than Litigating a Consolidated Action*

It is undeniable that litigating multiple separate causes of action versus one consolidated action would take substantially more time for the Court and the parties. Thus, "the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation." *Kaplan*, 2016 WL 9383330, at *2.

> d. *Factor 4: The Expense of Multiple Trials Supports Consolidation*

"Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in [two] separate cases." *Id.* Thus, this factor also supports consolidation. Therefore, the Court should consolidate these (and all future) related cases.

## IV.   PROPOSED INTERIM CLASS COUNSEL MEET THE REQUIREMENTS OF RULE 23(G)

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Crowe v. Managed Care of North America, Inc., d/b/a MCNA Dental*, Case No. 23-61065 (S.D. Fla. Sept. 27, 2023) (citations omitted); *Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court

8

appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## V.   PROPOSED INTERIM CLASS COUNSEL SHOULD BE APPOINTED

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion.

Proposed Interim Class Counsels' experience, knowledge, resources, and successful track record litigating consumer similarly situated cases demonstrate that they are superbly qualified to represent the proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

### A.   Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV.

9

13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Incident, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things: (1) investigating the facts surrounding the Incident; (2) interviewing numerous consumers injured by the Incident; (3) researching legal claims; (4) drafting initial pleadings; (5) investigating and retaining experts in the area of data security and damages; and, (6) organizing Plaintiffs and counsel and discussing consolidating the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the Related Actions are egregious in terms of the impact to individual patients and the consumer marketplace as a whole. Given the scope of the Incident and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationships, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating duplication of work.

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg.* Co., No. 5:18-cv-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 218) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

**B.     Proposed Interim Class Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation**

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Interim Class Counsel possess the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of tens of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g., In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (N.D. Cal. July 27, 2015) (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each has substantial experience, resources, and knowledge that will benefit the putative class as this litigation proceeds

***Mariya Weekes of Milberg, PLLC***

Mariya Weekes is a partner at the international plaintiffs' class action firm Milberg, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and

recovered over $50 billion in verdicts and settlements.[1] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[2] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg is recognized as having one of the most respected data privacy practice groups in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024).  Law360 recently highlighted Milberg's work in the privacy space. Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal.

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.*, *In Re: Hot Topic Data Breach Litigation*, No. 2:24-cv-9215-MEMF-AS (C.D. Cal.) (Ms. Weekes appointed co-lead counsel in a consolidated action involving more than 57 million customers); *In Re:*

---

[1] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

*LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc.*, No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers); *Morrison et al. v. Family Dollar Stores, LLC, et al.*, 0:24-cv-60294-AHS (S.D.Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *In Re ConnectonCall.com Data Breach Litigation*, Case No. 2:24-cv-08790-SJB-JMW (E.D NY) (Ms. Weekes appointed Interim Co-Lead Counsel); *Zayatz v. Akumin Operating Corp.*, Case No. 0:24-cv-62439-RS (S.D. Fl) (Ms. Weekes appointed Interim Co-Lead Counsel); *Owings v. Medusind, Inc.*, 1:25-cv-20117-RAR (S.D. Fl) (Ms. Weekes appointed interim co-lead counsel); *W. v. LivaNova USA, Inc.,* Case No. 4:24-cv-02250 (S.D. Tex.) (Ms. Weekes was appointed Interim Co-Lead Counsel); *In re Coastal Orthopedics & Sports Medicine of Southwest Florida Data Breach Litig.,* Case No. 2024-CA-1078AX (12th Judic. Circ. Ct. of Fla., Manatee Cnty) (Ms. Weekes was appointed Interim Class Counsel); *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, Case No. 1:24-cv-02398-VMC (N.D. Ga.) (Ms. Weekes was appointed co-lead counsel); *Lepore et al v. Affiliated Dermatologists & Dermatologic Surgeons, P.A.*, Case No. MRS-L-001091-24 (Ms. Weekes was appointed Interim Class Counsel); *Owens et al v. MGM Resorts International, et al.,* Case No. 2:23-cv-01480-RFB-MDC (D. Nev.) (Ms. Weekes was appointed to Plaintiffs' Steering Committee); *Mckinley v, Doxim, Inc.* Case No. 2:24-cv-11550-TGB-CI (E.D. Mich.) (Ms. Weekes was appointed co-lead counsel); *Cucuta v. FloridaCentral Credit Union,* Case

13

No. 24-CA-006065 (Hillsborough County, Fl.) (Ms. Weekes was appointed co-lead counsel).; *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[3] Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case). *See also* Milberg Firm Resume, attached hereto as ***Exhibit A***.

***Jeff Ostrow of Kopelowitz Ostrow P.A.***

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. ("KO") and has been practicing law for 28 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to more than 30 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial

---

[3] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in more than 500 pending data breach cases. He is currently court-appointed Lead Counsel in MDLs and in federal and state courts across the country. He is Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people, and settled for $27 million. Additional examples of data breach cases in which he serves as Lead Counsel include: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.), which settled for $177 million; *McNally, et al. v. Infosys McAmish Sys., LLC*, 1:24-cv-00995 (N.D. Ga.), which settled for $17.5 million; *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.), which settled for $45 million; *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), which settled for $13.75 million; *In re Berry, Dunn, McNeil & Parker Data Sec. Incident Litig.* (D. Me.), which settled for $7.25 million; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), which settled for $8.5 million; *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting 8.9 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million individuals.

Moreover, Mr. Ostrow has court-appointed positions in MDLs including *In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.), which settled for $17.0 million, as well as *In re: Snowflake, Inc., Data Breach Litig.*, MDL No. 3126 (D. Mont.); *In re: Consumer Vehicle Driving Data Tracking Collection*, MDL No. 3115 (N.D. Ga.); *In re Change Healthcare, Inc. Data Breach Litig.*, MDL No. 3108 (D. Minn.); and *In re: PowerSchool Holdings, Inc. Customer*

*Data Sec. Breach Litig.*, MDL No. 3149 (S.D. Cal.).

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's

claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Class Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members. A copy of Mr. Ostrow's resume, which includes additional information about Mr. Ostrow and his firm is attached hereto as ***Exhibit B***.

### *Tom Zimmerman of Zimmerman Law Offices, P.C.*

Tom Zimmerman is the owner of Zimmerman Law Offices, P.C. ("ZLO") with 30 years of litigation experience. ZLO has recovered over $650 million on behalf of millions of individuals and businesses nationwide.

Mr. Zimmerman has obtained multi-million dollar jury verdicts in class action, corporate, commercial, consumer fraud, constitutional due process, product liability, toxic tort, and other complex litigation. Mr. Zimmerman has been class counsel in national and statewide class action litigation, including: $156 million recovery in *In re. Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. CA); $62 million recovery in *Joseph v. Beiersdorf North America, Inc.*, No. 11 CH 20147 (Cook Cnty., Ill.); $48 million recovery in *PrimeCo Personal Communications, et al. v. Illinois Commerce Commission, et al.*, 98 CH 5500 (Cook Cnty., Ill.); $35 million recovery in *Vargas, et al. v. Ford Motor Co.*, No. 12 cv 8388 (C.D. Cal.); and $31 million in *In re Chicago Sun-Times Circulation Litigation*, No. 04 CH 9757 (Cook Cnty., Ill.).

Mr. Zimmerman is very experienced in data privacy litigation, and was class counsel in significant data privacy class action lawsuits, such as: $50 million recovery in *In Re: 23andMe, Inc., Customer Data Security Breach Litigation*, MDL No. 3098 (N.D. CA); $16 million recovery in

*Edenborough v. ADT, LLC*, No. 16 cv 2233 (N.D. Cal.); $11.2 million recovery in *In re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.); $7.3 million recovery in *Aliano v. Airgas USA, LLC*, No. 14 CH 20024 (Cook Cnty., Ill.); $6 million recovery in *In Re: Overby-Seawell Company Customer Data Security Breach Litigation*, MDL No. 3056 (N.D. GA); $5.1 million recovery in *Anderson, et al. v. U-Haul International Incorporated*, No. CV-22-1565 (D. AZ); $4.95 million recovery in *Culbertson, et al. v. Deloitte Consulting LLP*, No. 20 cv 3962 (S.D.N.Y.); $4.3 million recovery in *In re Herff Jones Data Breach Litigation*, No. 21 cv 1329 (S.D. Ind.); $4.3 million recovery in *In re Sonic Corp. Customer Data Breach Litigation*, MDL No. 2807 (N.D. Ohio); $1.75 million recovery in *Migliaccio, et al. v. Parker Hannifin Corp.*, No. 22 cv 835 (N.D. Ohio); $1 million recovery in *Radaviciute v. Christian Audigier, Inc.*, No. 10 cv 8090 (N.D. Ill.); $900,000 recovery in *Schmitt v. SN Servicing Corp.*, No. 21 cv 3355 (N.D. Cal.).

Mr. Zimmerman is class counsel in the following pending data breach cases that settled and have been granted preliminary approval: $26 million recovery in *In re Lakeview Loan Servicing Data Breach Litigation*, No. 22 cv 20955 (S.D. FL); $24.4 million recovery in *In re LastPass Data Security Incident Litigation*, No. 22 cv 12047 (D. MA); $2.4 million recovery in *In re Anne Arundel Data Breach Litigation*, No. 25 cv 02274 (D. MD).

Mr. Zimmerman is currently appointed to the plaintiffs' leadership in several pending data privacy class actions, including: Interim Class Counsel in *Jay Kay Collision Center, Inc., et al. v. CDK Global, LLC*, No. 24 cv 5313 (N.D. IL); Co-Chair of the Executive Committee in *In re LastPass Data Security Incident Litigation*, No. 22 cv 12047 (D. Mass.); Executive Committee member in *Doe v. GoodRx Holdings, Inc.*, No. 23 cv 501 (N.D. Cal.); *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 3108 (D. MN); *Garcia, et al. v. Set Forth, Inc., et al.*, No. 24 cv 11688 (N.D. IL).

In 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025, and 2026, Mr. Zimmerman was

selected as a *Super Lawyer* in the area of class action and mass torts.

A copy of Mr. Zimmerman's firm resume is attached hereto as ***Exhibit C***.

**C.      Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to This Case**

The resources Proposed Interim Class Counsel have already and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, is intimately familiar with practicing in this District, and each has committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

**D.      Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel**

Plaintiffs' and their respective counsels' support for the proposed leadership structure also

weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of all Plaintiffs, and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines (Best Practices 3C).[4] Selecting lawyers who have previously

---

[4] *See* Bolch Judicial Institute, Guidelines and Best Practices for Large and Mass-Tort MDLs 33 (2d ed. 2018) ("Duke Guidelines"). Although the Guidelines specifically address multi-district litigation, they are informative in a case such as this one.

worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.* Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute the consolidated action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, pooling clients, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Class Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully asks the Court to grant this motion and enter an order: (1) consolidating the above-captioned cases, and any future filed cases stemming from the Incident, into the first-filed *Lott* action; (2) appointing of Ms. Weekes, Mr. Ostrow, and Mr. Zimmerman as Interim Class Counsel; and (3) setting a deadline for the filing of a single consolidated complaint as thirty (30) days after the Court's order consolidating the cases and appointing leadership.

21

Dated: March 27, 2026

Respectfully submitted,

*/s/ Michael A. Smith, Jr.*
Michael A. Smith, Jr.
Fla. Bar No. 1061760
**DannLaw**
15000 Madison Ave. Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
Email: msmith@dannlaw.com

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
**Zimmerman Law Offices, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
Email: firm@attorneyzim.com

Marc E. Dann
(admitted *pro hac vice*)
**DannLaw**
15000 Madison Ave.
Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com

Jeff Ostrow (FBN 121452)
Andrew Hausdorff (FBN 1068481)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com
hausdorff@kolawyers.com

Mariya Weekes (FL Bar # 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Telephone: 786-879-8200
mweekes@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

22

## CERTIFICATE OF GOOD FAITH CONFERENCE; UNABLE TO CONFER

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant has made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought in the motion but has been unable to do so. The reasonable efforts made were specifically as follows: Plaintiffs' counsel met and conferred and agree on consolidation and leadership. Defense counsel has yet to appear.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on March 27, 2026.

/s/ Michael A. Smith, Jr.
Michael A. Smith, Jr